UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Fred Wayne High

    v.                                    Civil No. 10-cv-69-JD
                                        Opinion No. 2011 DNH 040
Michael J. Astrue, Commissioner
of Social Security Administration


O R D E R

Fred Wayne High seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration, denying his application for social security benefits. High moves to reverse the Commissioner's decision, on the grounds that the Administrative Law Judge ("ALJ") failed to assess adequately his treating physician's opinions, erred in assessing High's credibility, and lacked substantial evidence to support the decision. The Commissioner moves to affirm the decision.


Background

High contends that he is disabled due to pain caused by spondylolysis and spondylolisthesis in his back and the effects of mental impairments due to attention deficit hyperactivity

disorder ("ADHD"), depression, and anxiety.[1]  He was thirty-six years old in January of 2007 when he fell in his driveway and injured his back.  He had previously worked as a carpet installer for eighteen years, having dropped out of school at the ninth grade.

On January 31, 2007, High reported to his chiropractor, Dr. Jillian Santini, that he had woken up with sharp and constant low back pain.  Dr. Santini noted that an x-ray revealed "spondo" in the lumbar back at L5.  In February, High went to Dartmouth Hitchcock Hospital with complaints of back pain.  He said that his chiropractor had taken x-rays which showed that one of his vertebra was fractured, that a disc was bulging through, and that he had spondylolisthesis.  X-rays showed grade 1/5 anterior spondylolisthesis of L5 and S1 due to bilateral spondylolysis.  High was given prescriptions for Percocet, Norflex, and Lidoderm, and was told to follow up with his primary care physician.

---

[1] As explained in the Joint Statement of Material Facts: "Spondylolisthesis results when a stress fracture weakens a bone so much that it is unable to maintain its proper place and shifts out of place.  If the pars interarticularis, a portion of the lumbar spine joining the upper and lower joints, 'cracks' or fractures, it causes spondylolysis.  If that fracture gap widens and the vertebra shifts forward, the resulting condition is spondylolisthesis.  Spondyloises is a condition of the spine characterized by fixation or stiffness of a vertebral joint."

A few days later, High saw Physician's Assistant Elizabeth Doak.  PA Doak reviewed new x-rays and found a grade 1/5 spondylolisthesis at L5-S1.  She found no fractured vertebra.  On examination, despite High's complaints of radiating pain and worse pain with sitting, PA Doak noted that High sat comfortably through the examination with a little bit of stiffness when moving.  She also noted that she found no tenderness over the vertebra but some tenderness over the muscles in the lumbar area.  High had full muscle strength.  PA Doak explained to High that he had spondylolisthesis but no actual vertebral fracture.  Despite her explanation, High said that he would like to see a specialist.  PA Doak prescribed anti-inflammatory and pain medication and referred him New Hampshire Neurospine.

High was seen at New Hampshire Neurospine the next day.  On physical examination, High indicated more pain on extension than flexion, but he was not tender on palpation and had all normal reflexes.  Dr. Thomas Kleeman reviewed High's x-rays and diagnosed isthmic spondylolisthesis with a loss of disc height at L5-S1.  Dr. Kleeman ordered physical therapy and an MRI.  An MRI done on February 25, 2007, showed grade 1 L5 spondylolisthesis secondary to spondylolysis, bilateral and moderate foraminal stenosis at L5-S1, and a probable annular fissure at L4-L5.  Dr.

Kleeman told High to exercise, stop smoking and stay fit because he had multi-level spinal degeneration.

High completed a functional report on February 28, 2007, that was written for him by his girlfriend. High stated that he had the most pain in the morning but he could do his exercises after taking medication. He said that it took him time to get ready for doctor's appointments because he moved slowly and that he tried to do some household chores, such as taking care of his cats, but was limited because he could not bend over. He said that he slept poorly because of pain and discomfort. High also stated that he could not drive because of the effects of his medications. High completed other disability reports that were typed but not signed or dated.

In May of 2007, a state agency physician, Dr. Jonathan Jaffe, completed a "Residual Functional Capacity Assessment" form based on a review of High's medical records. Dr. Jaffee concluded that High was capable of light work. Dr. Jaffee stated that High's allegations of pain were credible but his claim that he had a fractured vertebra was not fully supported by the record.

Also in May of 2007, High attended a psychiatric evaluation conducted by a clinical psychologist, Stephanie Lynch, Ph.D., for the New Hampshire Department of Health and Human Services

Medicaid Administration. Dr. Lynch made observations about High's presentation and behavior. She also administered a mini mental status examination. In Dr. Lynch's opinion, High had a moderate degree of functional loss in his activities of daily living and in social interactions. She indicated that he could work but that he would need to take breaks, that his pace of work was slowed, and that he would have work-related stress reactions. Dr. Lynch recommended case management and psychotherapy with medication but expected that even with treatment, High's level of functioning would be moderately limited from a psychological point of view. She diagnosed major depression and mixed personality disorder with obsessive features and chronic pain.

In June of 2007, Dr. Santini completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form. She concluded that High could lift up to ten pounds occasionally and less than ten pounds frequently; that his maximum combined ability to sit, stand, and walk was three hours in an eight-hour day; that he would need to elevate his hips or legs; and that he was limited in his abilities to push, pull, and climb stairs and could perform no other postural activities. Dr. Santini also indicated that High had side effects from his medications and that other non-physical abilities were affected by his ADHD.

High saw Dr. Michael Mattin at Willowbend Family Practice in July of 2007 because of shoulder pain; problems with fatigue, shortness of breath, and joint and back pain; and depressed or anxious mood.  Dr. Mattin noted psoriasis, fatigue, swelling, back, neck and shoulder pain and depressed mood.  Dr. Mattin prescribed Prozac to treat depression.  X-rays of the cervical spine showed moderate degenerative changes.

In August of 2007, High saw another chiropractor, Peter Bailey, because of low back pain that caused difficulty sitting, standing, walking, sleeping, and working.  High also said that he had shooting pain in his right leg.  Dr. Bailey noted that High was not in acute distress, that sensation and strength in his legs were normal, that he had a normal range of motion except for left flexion and rotation, and that his walking was normal. Straight leg raising and lowering were positive for low back pain.  Palpation showed tenderness and bundling at L5-S1 and on the right at the superior ilium.  After reviewing x-rays and MRI results, Dr. Bailey noted spondylolysis and spondylitis spondylolisthesis.  Dr. Bailey recommended adjustments and physiotherapy modalities to decrease the symptoms and improve overall functional capacity.  High continued to treat with Dr. Bailey with mixed results.

On October 27, 2007, High saw Dr. Mattin for follow-up on his ADHD and back pain. High noted that his ability to function deteriorated when he was not taking Adderall for ADHD. High reported that chiropractic treatment had made some progress on his back, but he was walking stiffly and said that he had pain radiating down his right arm. Dr. Mattin prescribed Neurontin for nerve pain, Prozac, and nortriptyline to help him stop smoking and to sleep.

Another non-examining state agency physician reviewed High's records and completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" in December of 2007. Dr. Anselmo G. Mamaril stated that High was capable of light work but he could not climb ladders or scaffolds or be near unprotected heights, could only occasionally be around moving mechanical parts, and could frequently operate a car.[2] At the same time, High reported to Dr. Bailey that he was about the same, although with less tingling because of medication.

From January of 2008 through July of 2009, High continued treatment with Dr. Bailey and Dr. Mattin. The medical records document High's continuing complaints of back and shoulder pain

---

[2] The parties' Joint Statement of Material Facts mistakenly identifies Dr. Mamaril as Dr. Gill.

and headache.  In addition, High told Dr. Mattin that when he did not take Adderall for ADHD, he became forgetful and "wifty."

Both Dr. Bailey and Dr. Mattin completed assessment forms on July 28, 2008.  Dr. Bailey indicated that High could lift twenty pounds occasionally and ten pounds frequently; that he could sit, stand, and walk for five hours in an eight-hour day; that he would need to take unscheduled breaks to relieve pain, and that he would have limitations in his ability to do certain activities.  Dr. Mattin indicated on the form that High could lift and carry up to ten pounds occasionally and less than ten pounds frequently; that he could sit, stand, and walk for three hours during an eight-hour day; that he needed the opportunity to shift positions at will with unscheduled breaks; that he would be unable to do postural activities, such as climbing, due to poor balance; and that he was limited by the effects of medications, ADHD, depression, and fatigue due to pain.

A hearing was held before an ALJ on September 16, 2009. High testified that he was uncomfortable driving because of all the medications he was taking.  He said that his ability to do things was limited by his inability to read well, spell, and remember.  He testified that he continued to see Dr. Mattin about every three months but could not afford to continue with chiropractic treatment or counseling.  He also testified that he

took medication to make himself comfortable and when he was uncomfortable, he would shift positions and sleep. He said that the medication for ADHD helped that condition but he still forgot things.

High testified that the stenosis caused pain in his neck, shoulder, and right arm, that his hand went numb sometimes for an entire day, and that lifting and reaching aggravated the condition. He described bilateral knee pain and pain caused by standing too long. He said that he had trouble sitting and moved around a lot. High also testified that he was depressed by his circumstances.

Keri Mallahan, High's girlfriend who lives with him, also testified at the hearing. Mallahan testified that she noticed High became depressed after January of 2007, that he became more forgetful on medication, and that she attended High's medical appointments with him because he had difficulty filling out forms. Mallahan also testified that High had difficulty sitting through dinner. She said that he had changed dramatically. Mallahan's mother submitted an affidavit in which she stated that she also lives with High.

The ALJ issued his decision on September 30, 2009. The ALJ found that High had a severe impairment due to degenerative disc disease of the lumbar spine. He also found non-severe

impairments due to ADHD, depression, and arm, neck, and knee pain.  Despite his impairments, the ALJ found that High retained the ability to do a full range of light work.  The ALJ concluded that High could not return to his former work but under the Medical-Vocational Guidelines ("Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, he was not disabled.

When the Decision Review Board failed to review High's claim within the time allowed, the ALJ's decision became the final decision for judicial review.  20 C.F.R. § 405.405.

## Standard of Review

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

Disability, for purposes of social security benefits, is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The ALJ follows a five-step sequential analysis for determining whether an applicant is disabled. 20 C.F.R. § 404.1520. The applicant bears the burden, through the first four steps, of proving that her impairments preclude her from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the burden shifts to the Commissioner to show that work, which the claimant can do despite her disabilities, exists in significant numbers in the national economy. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

## Discussion

High contends that the ALJ erred in finding that he was not disabled because he did not assess properly the opinions of High's treating physicians, because he did not assess properly High's credibility, and because the decision was not supported by substantial evidence. High asks that the decision be reversed and remanded. The Commissioner moves to have the decision affirmed.

In several contexts, the ALJ faults High for referring to his condition, spondylolisthesis secondary to spondylolysis, as a broken or fractured vertebra. The ALJ interprets those references as evidence that High was not credible and that any opinion based on that statement would lack weight. Because the definition of spondylolisthesis includes a reference to vertebra fracture, however, High may have been justifiably confused, despite his providers' efforts to explain his condition. The ALJ's focus on that description to undermine High's credibility and as a basis to ignore medical opinions is not persuasive.

A. Medical Opinions

In making a disability determination, the ALJ is required to consider "the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [in the record]." 20 C.F.R. § 404.1527(b). The ALJ affords weight to a medical opinion based on the nature of the relationship. § 404.1527(d).

An opinion based on one or more examinations is entitled to more weight than a non-examining source's opinion, and a treating source's opinion, which is properly supported, is entitled to more weight than other opinions. Id. A treating source's opinion on the nature and severity of the claimant's impairments will be given controlling weight if the opinion is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(d)(2).

If a treating source's opinion is not entitled to controlling weight, the ALJ considers the length of the treatment relationship, the frequency of examination, and the extent of the treating source's knowledge about the claimant's impairment to determine what weight, if any, to give the opinion. Id. A treating source's opinion will be given more or less weight depending on the evidence provided to support the opinion, the degree to which it is consistent with the record, whether the source is a specialist in the field, and other factors that are raised by the claimant. § 404.1527(d). In all cases, the ALJ will explain the reasons for giving a treating source's opinion more or less weight. Id., see also LaBreque v. Astrue, 2011 WL 285678, at *4-*5 (D.N.H. Jan. 28, 2011).

Dr. Mattin has been High's primary care physician since July of 2007. In July of 2008, Dr. Mattin completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" in which he determined that High was capable of lifting and carrying at the sedentary exertional level. With respect to sitting and standing, however, Dr. Mattin found that High could only sit, stand, and walk for a total of three hours in an eight-hour day.

He also wrote that High would need frequent rest periods and would need to elevate his feet as often as possible. Dr. Mattin further found a variety of limitations related to use of the hands and feet, certain postures, and work environments.

The ALJ noted some of the limitations in Dr. Mattin's opinion. Without explanation, the ALJ gave limited weight to the opinion, crediting it only to mean that High "is unable to perform past work as a carpet installer." The opinions of High's treating chiropractors were consistent with Dr. Mattin's opinion, but the ALJ gave the opinions no weight because chiropractors are not medical sources under the regulations and because he thought their opinions were based on a mistaken impression that High suffered from a fractured vertebra.

Although the Commissioner in his motion to affirm the decision offers an analysis of Dr. Mattin's opinion in the context of the medical records and provides a variety of justifications for the ALJ's conclusions, that does not satisfy the regulatory requirements for an appropriate analysis by the ALJ. An agency's action can only be affirmed on the basis provided in the decision. See Bard v. Boston Shipping Ass'n, 471 F.3d 229, 244 (1st Cir. 2006); Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). Therefore, in the context of reviewing a social security decision, the court cannot consider or provide

post hoc rationalizations for the ALJ's decision and instead is limited evaluating the decision "based solely on the reasons stated in the decision," which precludes consideration of other grounds as a means to salvage an otherwise deficient decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The ALJ did not properly consider Dr. Mattin's opinion, which undermines his findings unless substantial evidence in the record supports them.

B. Substantial Evidence

In determining that High was capable of light work without other restrictions, the ALJ relied on the opinions of the two state agency non-examining consultant physicians, Dr. Jaffe and Dr. Mamaril. Their opinions, however, were based on a review of High's records in May and December of 2007, which was before much of High's medical treatment occurred. In contrast, Dr. Mattin's evaluation was done in July of 2008, and the medical records continue into 2009. The ALJ does not explain why the non-examining consultant physician opinions would be entitled to weight under these circumstances.

In addition, the ALJ states: "Thus, the medical record, including recent evaluations in 2009, and the claimant's own

statements, support the conclusion that his functional capacity is not as limited as alleged." AR at 14. The parties' Joint Statement of Material Facts does not include any evaluations done in 2009. Because the ALJ goes on to describe Dr. Jaffe's and Dr. Mamaril's opinions, it appears that he mistakenly believed that their reviews of the medical records occurred in 2009 instead of 2007. Under these circumstances, Dr. Jaffe's and Dr. Mamaril's opinions do not provide substantial evidence to support the ALJ's decision.

## Conclusion

For the foregoing reasons, the plaintiff's motion to reverse (document no. 9) is granted. The Commissioner's motion to affirm (document no. 14) is denied.

The case is remanded pursuant to "Sentence Four" of § 405(g). The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 17, 2011

cc: Elizabeth R. Jones, Esquire
    Gretchen Leah Witt, Esquire